******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* RUBEN VASQUEZ
(AC 42147)

Bright, Moll and Bishop, Js.

*Syllabus*

The acquittee, who had been found not guilty of certain crimes by reason
of mental disease or defect, appealed to this court from the judgment
of the trial court denying his application for discharge from the jurisdic-
tion of the Psychiatric Security Review Board. He claimed that the
diagnoses attributed to him—cannabis induced psychotic episode, an
acute intoxication now in full remission, cannabis use disorder in remis-
sion in a controlled environment, and alcohol use disorder in remission
in a controlled environment—are not considered mental illnesses and,
thus, do not constitute psychiatric disabilities pursuant to the statutes
(§§ 17a-580 through 17a-602) concerning the psychiatric security review
board. *Held* that the trial court did not err in denying the acquittee's
application for discharge from the jurisdiction of the board and determin-
ing that the acquittee's diagnoses constituted psychiatric disabilities
under §§ 17a-580 through 17a-602; that court's finding that the acquittee
was mentally ill, suffered from a substance induced psychotic disorder
and, thus, suffered from more than mere substance abuse was not clearly
erroneous, as the court, in making that finding, considered testimony
from a treating forensic psychiatrist, as well as the acquittee's history
under the supervision of the board, his anxious and impulsive behavior
over the past eight years, the nature of and circumstances surrounding
his criminal conduct in assaulting and attempting to assault individuals,
his need for continued therapy and supervision, his refusal to consider
medication as recommended and his lack of compliance and honesty
with staff members and treaters, and on the basis of the totality of the
evidence, the court determined that if the acquittee were to be released
from the board's supervision entirely, he would under those circum-
stances present a danger to himself or others.

Argued September 24—officially released December 17, 2019

*Procedural History*

Application for discharge from the jurisdiction of the
psychiatric security review board, brought to the Supe-
rior Court in the judicial district of Hartford and tried
to the court, *D'Addabbo, J.*; judgment dismissing the
application, from which the acquittee appealed to this
court. *Affirmed.*

*Monte P. Radler*, public defender, with whom was
*Richard E. Condon, Jr.*, senior assistant public
defender, for the appellant (acquittee).

*Sarah Hanna*, assistant state's attorney, with whom,
on the brief, were *Gail P. Hardy*, state's attorney, *Vicki
Melchiorre*, supervisory assistant state's attorney, and
*Adam B. Scott*, supervisory assistant state's attorney,
for the appellee (state).

*Opinion*

BISHOP, J. The acquittee,[1] Ruben Vasquez, appeals from the judgment of the trial court denying his application for discharge from the jurisdiction of the Psychiatric Security Review Board (board).[2] On appeal, the acquittee claims that the court erred in denying his application for discharge because the diagnoses attributed to him—cannabis induced psychotic episode, an acute intoxication now in full remission; cannabis use disorder in remission in a controlled environment; and alcohol use disorder in remission in a controlled environment—are not considered mental illnesses and, thus, do not constitute psychiatric disabilities under General Statutes §§ 17a-580 through 17a-602 (board statutes). We affirm the judgment of the court.

The following facts and procedural history are relevant to our analysis. "[On July 14, 2009, the acquittee] . . . randomly attack[ed] five young individuals, with a four foot six inch [one by four] hard yellow pine pressure treated board. Two of the young individuals attacked were a three and one year old child. While being taken into custody, [the acquittee] physically attacked a police officer."

The acquittee was charged with four counts of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), four counts of criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-50 (a) (1), and two counts of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1).[3] On June 7, 2011, the acquittee was found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13.[4] On August 8, 2011, the court, *Randolph, J.*, committed the acquittee to the jurisdiction of the board and ordered that he be confined at Dutcher Service on the campus of the Connecticut Valley Hospital for a period not to exceed fifteen years.

On July 25, 2017, in accordance with § 17a-593 (a), the acquittee filed an application with the court seeking discharge from the jurisdiction of the board. The court forwarded the application to the board, which held a hearing on September 15, 2017, pursuant to General Statutes § 17a-593 (d). On October 26, 2017, the board filed its report with the court recommending that the acquittee not be discharged because "[a]lthough [the acquittee's] psychotic symptoms have not been active since his commitment to the [b]oard, he has repeatedly demonstrated poor judgment, impulsivity, deceitfulness and rule breaking behavior. He has disregarded the rules and protocols in a hospital setting, thereby jeopardizing the [t]emporary [l]eave that would have permitted [the acquittee] to transition to the community. [The acquittee's] treatment team has recommended he con-

sider medication to assist with some of his problematic behaviors, but he has declined the recommendation.''

In addition, in its report filed with the court, the board discussed the acquittee's risk factors, stating that ''[a] significant risk factor for [the acquittee] remains his history of substance use. As testimony indicated, a substance use relapse would increase [the acquittee's] risk for a re-emergence of his psychotic symptoms. Testimony noted that stress has the potential to exacerbate [the acquittee's] risk of relapse. If discharged from the jurisdiction of the [b]oard, [the acquittee] would return to the community without an established support network. Given that [the acquittee's] psychotic symptoms are intimately tied to his substance use, and [that the acquittee] failed to conform his behavior appropriately in a supervised inpatient setting, the [b]oard finds that [the acquittee's] risk for a substance abuse relapse in a nonsupervised setting without an established community support network is significant. Therefore, the [b]oard finds that [the acquittee] cannot reside safely in the community without [b]oard oversight and should remain under the supervision and jurisdiction of the [b]oard.''

On May 29, 2018, after receiving the report, the court, *D'Addabbo, J.*, held a hearing on the acquittee's application for discharge pursuant to § 17a-593 (f). The court heard testimony from the following individuals: Maya Prabhu, M.D., consultant to the Department of Mental Health & Addiction Services; the acquittee; and Larry Spencer of the Capitol Region Mental Health Center. The court concluded the evidentiary portion of the hearing on May 29, 2018, and heard arguments from the parties' respective counsel on June 18, 2018.

On July 27, 2018, the court issued a memorandum of decision denying the acquittee's application for discharge, concluding that, on the basis of the evidence presented at the May 29, 2018 hearing, the acquittee has ''psychiatric disabilities'' and ''if . . . released from the [b]oard's supervision entirely . . . would . . . present a danger to himself or others.'' This appeal followed. Additional facts will be set forth as necessary.

The acquittee claims that the court erred in denying his application for discharge because the diagnoses attributed to him—cannabis induced psychotic episode, an acute intoxication now in full remission; cannabis use disorder in remission in a controlled environment; and alcohol use disorder in remission in a controlled environment—are not considered mental illnesses and, thus, are not psychiatric disabilities under the board statutes. In making this claim, the acquittee invites this court to overlook our Supreme Court's decision in *State* v. *March*, 265 Conn. 697, 830 A.2d 212 (2003), and this court's decision in *State* v. *Kalman*, 88 Conn. App. 125, 868 A.2d 766, cert. denied, 273 Conn. 938, 875 A.2d 44 (2005), and to conclude that, because his diagnoses are

based on substance and alcohol abuse, they cannot be considered mental illnesses or psychiatric disabilities under the board statutes. We are not persuaded.

We first review the statutory procedure relevant to an application for discharge by an acquittee from the jurisdiction of the board. When an individual is found not guilty by reason of mental disease or defect, the individual—the acquittee—is committed to the custody of the Commissioner of Mental Health and Addiction Services for examination of the acquittee's mental condition. General Statues § 17a-582 (a). Once the examination is complete, a hearing is held, and the court determines whether the examinee should be confined,[5] conditionally released,[6] or discharged.[7] General Statutes § 17-582 (e) (1) and (2). If the court finds that the acquittee should be confined, the acquittee is committed to the jurisdiction of the board for a maximum term of commitment, no longer than that which could have been imposed if the acquittee had been convicted of the offense. General Statutes § 17a-582 (e) (1).

After the court has committed the acquittee to the jurisdiction of the board, the board must conduct a hearing within ninety days to review the status of the acquittee. General Statutes § 17a-583 (a). During the hearing, the board must consider whether the acquittee should continue to be confined or whether the acquittee should be conditionally released or discharged. General Statutes § 17a-584. The board is required to conduct these hearings at least once every two years until the acquittee is discharged. General Statutes § 17a-585. The acquittee may apply to the court for discharge no sooner than six months after the board's initial hearing and not more than once every six months thereafter. General Statutes § 17a-593 (a). The court then forwards the application for discharge to the board. Thereafter, the board has ninety days after receiving the application to file a report with the court setting forth findings and conclusions as to whether the acquittee should be discharged. General Statutes § 17a-593 (d).

Upon receiving the report, the court conducts a hearing on either the recommendation from the board or the acquittee's application for discharge. General Statutes § 17a-593 (f). At the hearing, the acquittee has the burden of proving by a preponderance of the evidence that he or she should be discharged. General Statutes § 17a-593 (g). Thereafter, the court makes a finding regarding the mental condition of the acquittee, "considering that its primary concern is the protection of society . . . ." General Statutes § 17a-593 (g). In its finding, the court may determine either that the application for discharge be dismissed or that the acquittee be discharged from the board's custody. See § 17a-593 (g).

Here, the acquittee claims that the court erred in denying his discharge application on the ground that his diagnoses constituted psychiatric disabilities under

the board statutes. More specifically, the acquittee asserts that because General Statutes § 17a-458 (b) differentiates between "persons with psychiatric disabilities"[8] and "persons with substance use disorders,"[9] the acquittee is not considered to have a "psychiatric disability."

Resolution of the acquittee's claim on appeal requires us to interpret the meaning of the terms "psychiatric disability" and "mental illness" under the board statutes, which presents a question of statutory interpretation over which our review is plenary. See *State* v. *March*, supra, 265 Conn. 705. On the basis of our interpretation of the relevant statutory scheme, we then assess whether the court's factual determination of the status of the acquittee's mental health was clearly erroneous.

General Statutes § 17a-580 (7) provides: " 'Psychiatric disability' includes any mental illness in a state of remission when the illness may, with reasonable medical probability, become active. 'Psychiatric disability' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct . . . ."

In addition, as our Supreme Court explained in *State* v. *March*, supra, 265 Conn. 697, "[t]he statutes relevant to this appeal, [the board statutes], are contained in part V of chapter 319i [of our General Statutes]. . . . General Statutes § 17a-581 (j) authorizes the board to adopt regulations necessary to carry out the purposes of chapter 319i. Section 17a-581-1 of the Regulations of Connecticut State Agencies provides: These rules and regulations will govern practice and procedure before the [board] as authorized by [§§] 17a-580 through 17a-602 of the General Statutes. Section 17a-581-2 (a) (11) of the Regulations of Connecticut State Agencies corresponds to § 17-580 (11) of the General Statutes. [Section 17-580 (11)] defines a person who should be discharged pursuant to § 17a-593 as an acquittee who does not have psychiatric disabilities . . . to the extent that his discharge would constitute a danger to himself or others . . . whereas [§ 17a-581-2 (a) (11)] provides that '[p]erson who should be discharged means an acquittee who is not mentally ill or mentally retarded to the extent that his discharge would constitute a danger to himself or others. . . . Subsection (a) (5) of [§ 17a-581-2] defines mental illness as follows: Mental illness means any mental illness or mental disease as defined by the current Diagnostic and Statistical Manual of Mental Disorders [(DSM-V)] of the American Psychiatric Association and as may hereafter be amended. . . .

"Thus, it is apparent that the . . . definitions found in § 17a-458 [b] do not apply to part V of chapter 319i because that statute specifically enumerates the sections to which it applies and does not refer to any of the sections in part V." (Citations omitted; footnotes

omitted; internal quotation marks omitted.) Id., 706–708.

Furthermore, in *State* v. *Kalman*, supra, 88 Conn. App. 125, as in this case, the acquittee was found not guilty of criminal charges by reason of mental defect or disease and was committed to the jurisdiction of the board. The acquittee in *Kalman* claimed that his mental condition was "characterized by alcohol dependence, in remission in a controlled environment; cocaine dependence, in remission in a controlled environment"; and other substance induced mood disorders. Id., 134–35. Similar to this case, the acquittee in *Kalman* claimed that his diagnoses were not psychiatric disabilities because the statutory scheme for civil commitments applied and excluded alcohol and drug-dependent persons as individuals who have mental or emotional conditions. Id., 135.

This court in *Kalman* concluded that the civil commitment statutes were not relevant to whether the acquittee had a psychiatric disability under General Statutes §§ 17a-580 through 17a-603. Id. Rather, this court concluded that based on our Supreme Court's reasoning in *State* v. *March*, supra, 265 Conn. 708, the definition of "psychiatric disability" found in the board statutes applied. *State* v. *Kalman*, supra, 136.

On review, we are bound not only by the holdings of *Kalman* and *March* but also by the persuasiveness of their reasoning. First, "[i]t is axiomatic that, [a]s an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it. . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *Bischoff*, 189 Conn. App. 119, 123, 206 A.3d 253, cert. granted, 331 Conn. 926, 207 A.3d 28 (2019). Second, "[t]his court often has stated that this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *State* v. *Carlos P.*, 171 Conn. App. 530, 545 n.12, 157 A.3d 723, cert. denied, 325 Conn. 912, 158 A.3d 321 (2017).

Because we are bound by our Supreme Court's opinion in *State* v. *March*, supra, 265 Conn. 697, and this court's opinion in *State* v. *Kalman*, supra, 88 Conn. App. 125, we conclude that the court did not err in determining that the acquittee's diagnoses were mental illnesses defined by the DSM-V, which constituted psychiatric disabilities under the board statutes.[10]

In addition to our task of statutory construction, we must also review the court's determination of the acquittee's mental health condition. "The determination as to whether an acquittee is currently mentally ill . . .

is a question of fact and, therefore, our review . . . is governed by the clearly erroneous standard. . . . A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority . . . is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . .” (Citation omitted; internal quotation marks omitted.) *State* v. *Jacob*, 69 Conn. App. 666, 680, 798 A.2d 974 (2002).

In reaching its conclusion that the acquittee was mentally ill and thus suffered from a substance induced psychotic disorder, the court considered testimony from Dr. Maya Prabhu, a treating forensic psychiatrist, who has been involved with the acquittee’s psychological treatment since his commitment to the board. During her testimony, Dr. Prabhu explained that the acquittee suffered from an underlying psychosis that was induced by substance abuse. The court found that “[a]ccording to Dr. Prabhu, [the acquittee] tends to see his ‘crime’ as being related to substance abuse and [does not] think he needs to be on medication for his mental illness issues. Dr. Prabhu present[ed] the acquittee as an individual that has difficulty with emotional regulation when stressed. . . . During his commitment, [the acquittee] became involved in a relationship with another patient at Whiting Forensic. [The acquittee] was not forthright with [Whiting Forensic staff] about the relationship. . . . The issues related to the . . . relationship . . . caused a stressful situation for [the acquittee] . . . [and the acquittee] engaged in a series of rule infractions. Dr. Prabhu testified that this relationship became tempestuous and volatile. [The acquittee] was observed . . . on the telephone with [the other patient] engaging in volatile conversations. . . . A review of the hospital records indicate[d] that in the month of March 2017 there were approximately 500 telephone calls between [the acquittee] and the [other patient]. Dr. Prabhu indicate[d] that this conduct is a product of the acquittee’s reaction to stress. He gets excessive, deeply anxious and frustrated. . . . In the face of this conduct, [the acquittee] lacks acceptance of having a mental illness. Dr. Prabhu opine[d] that unless he has treatment, this [reaction] to stress and resulting conduct would be a risk for him.”

In addition to the testimony of Dr. Prabhu, the court “considered the record which includes the acquittee’s history under the supervision of the [b]oard, his past diagnosis, his present diagnosis, his lack of violent behavior, his anxious and impulsive behavior over the past eight years, the nature of and circumstances sur-

rounding his criminal conduct in assault[ing] and attempting to assault individuals, his need [for] continued therapy and supervision, his refusal to consider medication to assist with some problematic behavior, previous [b]oard reports and the likelihood of any supervision upon his release from the [b]oard's jurisdiction. [T]he court also considered . . . his lack of compliance and honesty with the staff and treaters and his surreptitious conduct with prohibited items . . . [and] the conduct with the [other patient] and failure to abide by instructions to cease such conduct, which led to a termination of a temporary leave opportunity [and] cause[d] the [c]ourt pause." On the basis of the totality of this evidence, the court determined "that if the acquittee were to be released from the [b]oard's supervision entirely, he would under those circumstances present a danger to himself or others. In his current commitment under the [b]oard's supervision in his controlled environment . . . the risks of danger to himself or [others] are minimized." On the basis of our analysis of the applicable law and our review of the record, we conclude that the court's finding, consistent with the diagnoses in both the board's report and the doctor's testimony, that the acquittee suffered from more than mere substance abuse was not clearly erroneous, and, accordingly, that the trial court's denial of the acquittee's application was legally and factually correct.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "[An] '[a]cquittee' [is] any person found not guilty by reason of mental disease or defect pursuant to section 53a-13 . . . ." General Statutes § 17a-580 (1).

[2] We treat the court's denial of the acquittee's application as a dismissal pursuant to General Statutes § 17a-593 (g).

[3] One count of assault of a peace officer subsequently was dismissed.

[4] General Statutes § 53a-13 (a) provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

[5] General Statutes § 17a-580 (10) defines a "[p]erson who should be confined" as "an acquittee who has psychiatric disabilities or has intellectual disability to the extent that such acquittee's discharge or conditional release would constitute a danger to the acquittee or others and who cannot be adequately controlled with available supervisionand treatment on conditional release . . . ."

[6] General Statutes § 17a-580 (9) defines a "[p]erson who should be conditionally released" as "an acquittee who has psychiatric disabilities or has intellectual disability to the extent that his final discharge would constitute a danger to himself or others but who can be adequately controlled with available supervision and treatment on conditional release . . . ."

[7] General Statutes § 17a-580 (11) defines a "[p]erson who should be discharged" as "an acquittee who does not have psychiatric disabilities or does not have intellectual disability to the extent that such acquittee's discharge would constitute a danger to the acquittee or others . . . ."

[8] General Statutes § 17a-458 (a) defines "[p]ersons with psychiatric disorders" as "those persons who are suffering from one or more mental disorders as defined in the most recent edition of the American Psychiatric Association's 'Diagnostic and Statistical Manual of Mental Disorders' . . . ."

[9] General Statutes § 17a-458 (b) defines "[p]ersons with substance use disorders" as "alcohol dependent persons, as that term is defined in subdivision (1) of section 17a-680, or drug dependent persons, as that term is

defined in subdivision (7) of section 17a-680 . . . .”

[10] We note that the court relied on General Statutes § 17a-458 (a) for the definition of “persons with psychiatric disability.” The court nonetheless applied the correct standard in concluding that the acquittee suffered from mental illnesses as defined by the DSM-V and, consequently, from psychiatric disabilities under the board statutes.

––––––––––––––––––––––––––