******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DHATI COLEMAN
(AC 42157)

Keller, Elgo and Devlin, Js.

*Syllabus*

Convicted, on a conditional plea of nolo contendere, of the crimes of assault in the first degree, robbery in the first degree and criminal possession of a firearm, the defendant appealed to this court, claiming, inter alia, that the trial court improperly denied his motions to dismiss the charges against him because he was not brought to trial within a reasonable period of time in violation of his right to a speedy trial under the sixth amendment and his right under the Interstate Agreement on Detainers (§ 54-186 et seq.) to a final disposition of his case within 180 days from the date on which he requested a speedy disposition. The defendant had been arrested in 2017 in connection with a shooting he was alleged to have committed in 2014. DNA was recovered from a cap that was left at the scene of the shooting. Shortly after the shooting, the police received information that the defendant had fled to Maine and obtained a warrant authorizing the taking of a DNA sample from him that was to be compared with the DNA sample from the cap. The DNA samples were not sent to the state's forensics laboratory until 2016, when the laboratory matched the defendant's DNA with that on the cap. In July, 2016, the police submitted to the state's attorney's office a draft arrest warrant application for the defendant, which was not signed by the affiant until February, 2017, and by the court until March, 2017, when the defendant was in federal custody in New Hampshire. The defendant was not returned to Connecticut and arrested until August, 2017. After the defendant entered his plea but prior to sentencing, he filed a second motion to dismiss, claiming that the state had failed to comply with the 180 day requirement for a final disposition of his case pursuant to § 54-186 et seq. The trial court denied the defendant's motion to dismiss, reasoning that there had been no objection to the course of the proceedings under § 54-186 et seq., and rendered judgment in accordance with the defendant's plea. *Held*:

1. The defendant could not prevail on his claim that his right to due process was violated because the state's three year delay in filing charges against him caused him actual substantial prejudice and was unreasonable and unjustifiable:

   a. The trial court properly concluded that the defendant failed to prove that actual substantial prejudice resulted from the preaccusation delay; the defendant's claim that he was prevented from gathering documentary, exculpatory evidence or that there was any witness who could have provided exculpatory testimony was speculative, and his assertion that he was unable to secure video surveillance from the area of the crime scene was unsupported by evidence that such surveillance video existed or that it would have been exculpatory.

   b. The defendant's claim that the trial court improperly rejected his assertion that the state deliberately delayed his arrest to gain a tactical advantage over him was unavailing; it was not the role of this court to reexamine the evidence considered by the trial court or to construe it differently and in the light favorable to the defendant.

2. The defendant's express waiver of any claim stemming from the postarrest delay in bringing him to trial was fatal to his assertion of a violation of his rights to a speedy disposition of his case under the sixth amendment and § 54-186 et seq.

Submitted on briefs April 6—officially released July 21, 2020

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of assault in the first degree and robbery in the first degree, and with one count each of the crimes of larceny in the second

degree, carrying a pistol without a permit, criminal possession of a pistol or revolver, criminal possession of a firearm and criminal possession of ammunition, brought to the Superior Court in the judicial district of New Haven, where the court, *Blue, J.*, denied the defendant's motion to dismiss; thereafter, the defendant was presented to the court, *Clifford, J.*, on a conditional plea of nolo contendere to one count each of assault in the first degree, robbery in the first degree and criminal possession of a firearm; subsequently, the court, *Clifford, J.*, denied the defendant's motion to dismiss and rendered judgment in accordance with the plea, from which the defendant appealed to this court. *Affirmed.*

*Tamar R. Birckhead*, assigned counsel, filed a brief for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, *Patrick J. Griffin*, state's attorney, and *Michael Pepper*, supervisory assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

DEVLIN, J. The defendant, Dhati Coleman, appeals from the judgment of conviction, rendered after a conditional[1] plea of nolo contendere, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). On appeal, the defendant claims that the trial court should have dismissed the charges against him because (1) the three year delay between the date of the commission of the crimes in this case and his arrest (preaccusation delay) violated his right to due process under the fourteenth amendment to the United States constitution, and (2) once he was arrested, the state failed to bring him to trial within a reasonable period of time in violation of his right to a speedy trial under the sixth amendment to the United States constitution[2] and his right under the Interstate Agreement on Detainers (IAD), General Statutes § 54-186 et seq., to a final disposition of his case within 180 days from the date on which he requested a speedy disposition. We disagree and, accordingly, affirm the judgment of the trial court.

The defendant filed two motions to dismiss the charges against him. In denying his first motion to dismiss, the trial court, *Blue*, *J.*, set forth the following relevant factual and procedural history. "[The defendant] was arrested for the crimes alleged in this case on August 30, 2017. The state subsequently filed a long form information charging [him] with two counts of assault in the first degree, two counts of robbery in the first degree, larceny in the second degree, carrying a pistol without a permit, criminal possession of a pistol or revolver, criminal possession of a firearm, and criminal possession of ammunition. The charges arise from the alleged shooting of one Martin Carpentino in New Haven on August 7, 2014. . . .

"Carpentino was shot in a residential area of New Haven on August 7, 2014. He drove to a gasoline station several blocks away and called 911. According to the arrest warrant application, 'Carpentino described the shooter as a black male, five foot, ten inches, tall, short curly hair, thin but not skinny, wearing a puffy green vest, and last seen fleeing in an unknown direction on foot.' A police canvass of the area of the shooting failed to turn up any witness to the shooting. Other clues were subsequently developed.

"DNA was recovered from a baseball cap left at the scene of the shooting and sent to the state forensic laboratory. On September 17, 2014, a DNA profile from the cap was entered into state and national databases. . . . [The defendant] also left a cell phone in a motor vehicle connected to the crime.

"On August 14, 2014, the police received information

from an informant that [the defendant] was the shooter and had fled to Maine. As a result, on September 9, 2014, the court . . . signed a search and seizure warrant authorizing a DNA sample to be taken from [the defendant] and compared with the DNA sample taken from the cap. . . .

"[The defendant] was arrested on an unrelated drug charge in New Haven on September 9, 2014. The police obtained a DNA sample from him on that day. On December 23, 2014, [the defendant] entered a plea of guilty to the drug charge and was sentenced by the court . . . to seven years, execution suspended after two years, followed by three years of conditional discharge, to be served concurrently with his 'present sentence.' . . .

"On September 22, 2014, the police showed Carpentino an array of photographs, including a photograph of [the defendant]. Carpentino said that he was '90 percent sure' that the man depicted in [the defendant's] photograph was his assailant.

"The investigation then stopped for over a year. In December, 2015, Brian Diange, the New Haven [police] detective in charge of the shooting case, realized that the DNA sample taken from [the defendant] on September 9, 2014, had never been sent to the state forensic laboratory for comparison with the DNA taken from the baseball cap. A formal request for analysis was submitted on February 9, 2016. . . . On March 18, 2016, the laboratory matched [the defendant's] DNA with that on the cap.

"On July 14, 2016, the New Haven police submitted a draft arrest warrant to the office of the New Haven State's Attorney. The personnel in that office were not satisfied with the original draft [of the warrant], and discussions between the police and the state's attorney continued for several months. On February 28, 2017, a final draft of the arrest warrant application was signed by the affiant. On March 3, 2017, the court . . . signed the warrant.

"By this time, [the defendant] was in federal custody in New Hampshire. On May 31, 2017, the state's attorney received a letter from [the defendant] requesting a speedy trial under the [IAD]. On August 30, 2017, [the defendant] was returned to Connecticut and arrested for the crimes now in question.

"[The defendant] was arraigned in the Superior Court on August 31, 2017. On September 24, 2017, he agreed to toll his rights to a speedy trial under the constitution and the [IAD]. A series of such waivers has continued, with minor interruptions, to the present time." (Citations omitted.)

On January 19, 2018, the defendant filed a memorandum of law in support of a motion to dismiss that he subsequently filed on January 24, 2018 pursuant to

General Statutes § 54-193 (b). The defendant argued that his right to due process under the fourteenth amendment to the United States constitution was violated because the preaccusation delay of three years was deliberate and unreasonable and caused him to suffer substantial prejudice by denying him "the opportunity for a global resolution of [all of] the claims against him as well as the opportunity to properly develop a defense to the claims [at issue in this case]."

On January 24, 2018, the day that the defendant filed his motion to dismiss, the court commenced an evidentiary hearing on it, which continued on March 20 and 29, 2018. On April 27, 2018, the defendant filed another memorandum of law in support of his motion to dismiss, adding that the preaccusation delay resulted in the violation of his right to a speedy trial under the sixth amendment to the United States constitution. He also added that the delay violated his rights under the IAD.[3] On May 2, 2018, the state filed an objection to the defendant's motion, and the court heard argument on May 17, 2018. By way of a memorandum of decision filed May 18, 2018, the court denied the defendant's motion to dismiss on the grounds that the defendant had failed to prove that the preaccusation delay caused him actual substantial prejudice or that the reasons for that delay were wholly unjustifiable. The court further found that the defendant had waived any claim as to postarrest delay and, thus, rejected his claim under the IAD.

On June 1, 2018, the defendant entered conditional pleas of nolo contendere to assault in the first degree in violation of § 53a-59 (a) (1), robbery in the first degree in violation of § 53a-134 (a) (2) and criminal possession of a firearm in violation of § 53a-217 (a) (1). The court ordered a presentence investigation, over the defendant's objection,[4] and continued the case to August 9, 2018, for sentencing.

On August 7, 2018, the defendant filed a second motion to dismiss on the ground that the state failed to comply with the "180 day requirement of a final disposition of the defendant's case" under the IAD.

On August 9, 2018, at the sentencing hearing, the court, *Clifford, J.*, first addressed the defendant's second motion to dismiss. The court orally denied the defendant's motion, reasoning: "[Under the IAD] [t]he trial must commence within 180 days, obviously, unless [the defendant enters] pleas. I don't believe the sentencing also must occur within 180 days. The whole purpose of the statute is that these things be resolved within a time period. Resolved, to me, is either a trial or a plea. Because, what if it's a trial that starts on the 150th day and the trial takes three months; it's a major case, then you're well beyond 180 days. . . .

"No one objected on the record. The only one who

objected was the defendant [who] did not want a pre-sentence report. No one indicated that it was violating the [IAD]. . . .

"Obviously a presentence [investigation] report is mandated, normally. It can be waived under certain circumstances. It takes two sides to waive something. It did not happen here. . . . I will deny the motion to dismiss . . . ."

The trial court then imposed on the defendant a total effective sentence of nine years incarceration, followed by five years of special parole, and ordered that he receive credit for jail time he had served since August 30, 2017, the date that he was returned to Connecticut to face the charges in this case. This appeal followed.

On appeal, the defendant challenges the denial of both of his motions to dismiss the charges against him. "Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable legal standard of review for the denial of a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions of the trial court or its factual determinations." (Citation omitted; internal quotation marks omitted.) *State* v. *Samuel M.*, 323 Conn. 785, 794–95, 151 A.3d 815 (2016). With these principles in mind, we address the defendant's claims in turn.

I

The defendant first claims that the trial court erred in rejecting his argument that his right to due process was violated because the three year preaccusation delay caused him actual substantial prejudice and was unreasonable and unjustifiable.[5] We are not persuaded.

"The role of due process protections with respect to preaccusation delay has been characterized as a limited one. . . . [T]he [d]ue [p]rocess [c]lause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. . . . This court need only determine whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency . . . . The due process clause has not replaced the applicable statute of limitations . . . [as] . . . the primary guarantee against bringing overly stale criminal charges. . . .

"[T]o establish a due process violation because of preaccusation delay, the defendant must show both that

actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant. . . . [P]roof of prejudice is generally a necessary but not sufficient element of a due process claim . . . . [Additionally] the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." (Citation omitted; internal quotation marks omitted.) *State* v. *Pugh*, 190 Conn. App. 794, 806–807, 212 A.3d 787, cert. denied, 333 Conn. 914, 217 A.3d 635 (2019).

A

The defendant first challenges the trial court's determination that he failed to prove that he suffered actual substantial prejudice as a result of the preaccusation delay.[6] As to prejudice, the trial court reasoned: "No credible evidence supports [the defendant's] contention [that actual substantial prejudice resulted from the preaccusation delay] here. The defendant's claim in this regard rests on the testimony of his investigator, Kevin Johnson, who testified that he was hired on October 5, 2017, and was subsequently unable to locate potential witnesses to the shooting in question. Johnson was not, however, a credible witness. He testified on direct examination that Darryl Wilson, a potential witness, 'didn't want to talk' to him. On cross-examination, Johnson was forced to admit that Wilson was, in fact, willing to talk to him but did not know anything about the incident. When pressed by the court, Johnson failed to comprehend the difference between these two propositions. In the court's view, this brings the credibility of Johnson's entire testimony into serious question.

"Even if Johnson's entire testimony were to be believed, however, nothing in the evidence would substantiate a finding that evidence helpful to the defendant would have been discovered had he been arrested earlier. There is, for example, no claim that an alibi witness has died or disappeared since the time of the shooting. Any claim that potential witnesses, once located, would have provided evidence helpful to the defendant lies wholly in the realm of speculation."

On appeal, the defendant renews his argument that the preaccusation delay deprived him of the opportunity to develop a defense to the charges against him. He reiterates his claim that he was unable to locate witnesses to the crime because many of them had relocated. The trial court rejected the defendant's claim on the ground that Johnson was not credible when he testified about his inability to locate and interview witnesses. Because the trial court is the sole arbiter of credibility; see *Pena* v. *Gladstone*, 168 Conn. App. 175, 187, 146 A.3d 51 (2016) ("[q]uestions of whether to believe or to disbelieve a competent witness are beyond our review" (internal quotation marks omitted)); its finding in this regard must stand.

Moreover, as the trial court aptly noted, the defendant failed to prove that there was any witness who could have provided exculpatory testimony on his behalf and, thus, that his claim in this regard was merely speculative. The defendant's claim that the preaccusation delay prevented him from gathering documentary evidence that "could have been exculpatory" is also speculative. He contends that he was unable to secure video surveillance from the gas station, traffic cameras or neighboring businesses that "could have included critical information that was exculpatory or otherwise pertinent to [his] defense . . . ." The defendant's argument is unsupported by any evidence that such surveillance video ever existed or that it would have been exculpatory. Consequently, his claim in this regard also is unavailing. Accordingly, the trial court properly concluded that the defendant failed to prove that actual substantial prejudice resulted from the preaccusation delay in this case.[7]

## B

The defendant also challenges the trial court's conclusion that he failed to prove that the reasons for the preaccusation delay were wholly unjustifiable. In so concluding, the trial court first noted: " '[P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied that they will be able to establish the suspect's guilt beyond a reasonable doubt.' *United States* v. *Lovasco*, 431 U.S. [783] 791, [97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)]. . . .

" 'There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the [f]ourth [a]mendment if they act too soon, and a violation of the [s]ixth [a]mendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.' *Hoffa* v. *United States*, 385 U.S. 293, 310, [87 S. Ct. 408, 17 L. Ed. 2d 374] (1966)."

Applying the foregoing principles to the facts of this case, the court reasoned: "Although the police arguably had probable cause to arrest [the defendant] prior to the actual time of his arrest, the police cannot be faulted for doing a thorough investigation, including [the] DNA analysis. Similarly, the state's attorney cannot be faulted for requesting revisions in the initial arrest warrant application to strengthen the force of that application.

"The one portion of the preaccusation delay that, at least with the benefit of hindsight, is subject to criticism is the seventeen month delay between the taking of [the defendant's] DNA on September 9, 2014, and the

submission of that DNA to the state forensic laboratory on February 9, 2016. No legitimate reason for this delay appears in the record. This was, however, a delay caused by negligence rather than recklessness or a tactical decision to disadvantage the defendant. . . .

"Nothing remotely resembling an improper reason for the preaccusation delay in question here appears in the record. The defendant has consequently failed to establish either prong of the applicable due process test."

On appeal, the defendant argues that the trial court erred in rejecting his claim that the state deliberately delayed his arrest to gain a tactical advantage over him. In so arguing, the defendant essentially asks this court to reexamine the evidence that was considered by the trial court, but to construe that evidence differently and in the light favorable to him. It is not the role of this court to do so. "The function of an appellate court is to review, and not to retry, the proceedings of the trial court." (Internal quotation marks omitted.) *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 638, 161 A.3d 562 (2017).

"We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *In re Brooklyn O.*, 196 Conn. App. 543, 548,    A.3d    (2020). "Weighing the evidence and judging the credibility of the witnesses is the function of the trier of fact and this court will not usurp that role." (Internal quotation marks omitted.) *Iino* v. *Spalter*, 192 Conn. App. 421, 478, 218 A.3d 152 (2019). Accordingly, the defendant's challenge to the trial court's determination that the preaccusation delay was not unjustifiable must fail.

II

The defendant also claims that, once he was arrested, the state failed to bring him to trial within a reasonable period of time in violation of his right to a speedy trial under the sixth amendment to the United States constitution and his right under the IAD to a final disposition of his case within 180 days from the date on which he requested a speedy disposition. We disagree.

The following additional history is relevant to the defendant's claims. On May 17, 2018, at the hearing on the first motion to dismiss, the following colloquy occurred:

"The Court: So, if I could ask just that; it's my understanding that your client is arraigned on August 31, 2017 . . . in Connecticut, and then he's brought to part A, he's brought before Judge Clifford, and starting on September . . . 24th [or] it could be [September] 29th, the speedy trial—he began a series of waivers of his right to a speedy trial because, at that point, he didn't want—

he might've wanted it dismissed but he didn't want a speedy trial; is that fair to say?

"[Defense Counsel]: That's correct, Your Honor, yes.

"The Court: And that would seem—you still have your due process argument in terms of what happened prior to that time, but in terms of subsequent—

"[Defense Counsel]: There's no claim to any subsequent, Your Honor.

"The Court: Okay. So . . . it would really seem that this boils down to due process, correct, incorrect?

"[Defense Counsel]: Correct, Your Honor, yes."

On the basis of the foregoing, the trial court concluded that "the defendant conceded that he does not complain of any postarrest delay" and, thus, that he waived any claim arising from the period of time following his arrest in this case. We agree.

"[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim. . . .

"Both our Supreme Court and this court have stated the principle that, when a party abandons a claim or argument before the trial court, that party waives the right to appellate review of such claim because a contrary conclusion would result in an ambush of the trial court . . . . This principle applies to review pursuant to [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Grasso*, 189 Conn. App. 186, 225–26, 207 A.3d 33, cert. denied, 331 Conn. 928, 207 A.3d 519 (2019).

The defendant, for the first time, on appeal, raises his claim that he was denied his sixth amendment right to a speedy trial by virtue of an alleged delay following

his arrest. The defendant has not addressed his failure to raise this issue before the trial court and has not asked for review of this claim under *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[8] Even if he had sought *Golding* review, to which he arguably would be entitled on this claim of constitutional magnitude,[9] his express waiver of any claim stemming from the postarrest delay is fatal to his claim.[10] In light of that express waiver, his claim under the IAD is likewise without merit.[11]

Accordingly, we conclude that the trial court properly denied the defendant's motions to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] The defendant also claims that his right to be brought to trial in a reasonable amount of time was violated under article first, § 8, of the Connecticut constitution. Because he did not, however, brief that claim, we do not address it. See, e.g., *Riddick* v. *Commissioner of Correction*, 113 Conn. App. 456, 468, 966 A.2d 762 (2009), appeal dismissed, 301 Conn. 51, 19 A.3d 174 (2011).

[3] The precise nature of the defendant's claim under the IAD in his first motion to dismiss is difficult to ascertain. He did not, however, argue in his first motion to dismiss that his right to a final disposition within 180 days had been violated.

[4] The defendant objected to the presentence investigation on the sole ground that it was a "waste of the court's time."

[5] Although the defendant argued in his motion to dismiss that his sixth amendment right to a speedy trial was violated by the preaccusation delay, his sixth amendment claim on appeal is limited to the time period following his arrest.

[6] The trial court concluded that the defendant was arrested prior to the expiration of the five year statute of limitations applicable to the crimes with which he was charged. See General Statutes § 54-193 (b). The defendant has not challenged that conclusion.

[7] The defendant also argues that the preaccusation delay prevented him from including the charges in this case with his federal charges in negotiating a global resolution of them. He further contends that the state was able to use the federal charges against him at his state sentencing hearing and that the preaccusation delay prevented him from participating in rehabilitative programs in federal prison that otherwise might have been available to him. Although these may have been consequences of the defendant's arrest in this case, they cannot reasonably be construed as due process violations arising from the preaccusation delay.

[8] Under *Golding*, as modified by *In re Yasiel R.*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213

Conn. 239–40.

[9] We note that the defendant also failed to provide an adequate record for appellate view of this claim because he did not file transcripts of all of the court proceedings following his arrest.

[10] We note that, despite claiming in his statement of issues and in the conclusion of his appellate brief that the trial court erred in concluding "that the defendant had entirely waived the IAD right by conceding that he did not allege any postarrest delay," the defendant did not brief this claim.

[11] Because the defendant expressly waived his claim to any alleged postarrest delay, we need not address his various arguments pertaining to the commencement of that 180 period—whether it began on the date that he requested a speedy disposition under the IAD, the date that he was taken into custody in Connecticut, the date of his first court appearance or even the date that he became a suspect in the subject crimes. Likewise, we need not resolve the issue of whether "final disposition" under the IAD occurred when the defendant entered his nolo contendere plea or upon sentencing.

———————————————