******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* SHAMON SHARPLEY
### (AC 47242)

Elgo, Moll and Flynn, Js.

*Syllabus*

Convicted, following a conditional plea of nolo contendere, of the crime of assault in the third degree, the defendant appealed. He claimed that the trial court improperly denied his motion to dismiss because the state's ten month delay in executing the arrest warrant constituted an unreasonable delay that violated his right to due process. *Held*:

The trial court properly denied the defendant's motion to dismiss, as the defendant failed to demonstrate that the state's delay in executing the arrest warrant caused actual substantial prejudice and was wholly unjustifiable.

Argued March 10—officially released April 29, 2025

*Procedural History*

Information charging the defendant with the crimes of assault in the third degree and violation of a protective order, brought to the Superior Court in the judicial district of New London, geographical area number ten, where the court, *Caruso, J.*, denied the defendant's motion to dismiss; thereafter, the defendant was presented to the court, *Caruso, J.*, on a conditional plea of nolo contendere to the charge of assault in the third degree; subsequently, the state entered a nolle prosequi as to the remaining charge; judgment of guilty in accordance with the plea, from which the defendant appealed to this court. *Affirmed.*

*Chad L. Edgar*, assigned counsel, for the appellant (defendant).

*Lena A. Arnold*, special deputy assistant state's attorney, with whom, on the brief, were *Paul J. Narducci*, state's attorney, *Timothy F. Costello*, supervisory assistant state's attorney, and *Kaila Calling*, assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Shamon Sharpley, appeals from the judgment of conviction rendered by the trial court following his conditional plea of nolo contendere to the charge of assault in the third degree in violation of General Statutes § 53a-61.[1] On appeal, the defendant claims that the court erred in denying his motion to dismiss because the state's delay in the execution of the arrest warrant violated his due process rights under the Connecticut constitution and the United States constitution.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The defendant entered a conditional plea of nolo contendere to the state's recitation of the following facts. In November, 2022, the defendant visited the home of the victim, in violation of a protective order, and struck her in the eye, causing it to bleed.[3] On November 30, 2022, Officer Hunter Obermann of the New London Police Department filed an application for

---

[1] General Statutes § 53a-61 provides: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.

"(b) Assault in the third degree is a class A misdemeanor and any person found guilty under subdivision (3) of subsection (a) of this section shall be sentenced to a term of imprisonment of one year which may not be suspended or reduced."

[2] In his principal appellate brief, the defendant also claimed that the court erred by denying his motion to dismiss on the basis of statute of limitations principles. In his reply brief and during oral argument, however, the defendant abandoned this claim.

[3] The arrest warrant also stated that the defendant had struck the victim a few days prior, causing her to suffer a swollen lip. The arrest warrant states in relevant part: "It should be known that officers were unable to determine when the injuries were sustained due to the witness and the victim mentioning the injuries occurred a few days ago regarding the victim's eye and the swollen lip. The injuries sustained to the victim's right eye and her swollen lip are reported to be [from] different days."

an arrest warrant seeking to arrest the defendant for (1) assault in the third degree in violation of § 53a-61 (count one) and (2) violation of a protective order in violation of General Statutes § 53a-223[4] (count two). On December 3, 2022, the arrest warrant was signed by the court, *S. Murphy, J.* At that time, the defendant was incarcerated in a pretrial capacity in connection with six unrelated pending cases. On June 30, 2023, the defendant and the state entered into a global plea agreement that disposed of those six cases.

On September 28, 2023, the defendant was served with the arrest warrant. On October 24, 2023, the defendant filed a motion to dismiss the charges against him arguing, inter alia, that (1) the ten month lapse between the signing of the warrant and its execution constituted an unreasonable delay that did not comport with statute of limitations principles, and (2) that delay violated his right to due process.

On November 7, 2023, after having heard argument from the parties, the court, *Caruso, J.*, denied the defendant's motion to dismiss. The court stated: "I find that [the defendant] engaged in no elusive or evasive conduct to try to thwart the state's ability to serve the warrant on [the defendant]. So, therefore I find it is the

---

[4] General Statutes § 53a-223 provides: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, subsection (f) of section 53a-28, or section 54-1k or 54-82r has been issued against such person, and such person violates such order.

"(b) No person who is listed as a protected person in such protective order may be criminally liable for (1) soliciting, requesting, commanding, importuning or intentionally aiding in the violation of the protective order pursuant to subsection (a) of section 53a-8, or (2) conspiracy to violate such protective order pursuant to section 53a-48.

"(c) Criminal violation of a protective order is a class D felony, except that any violation of a protective order that involves (1) imposing any restraint upon the person or liberty of a person in violation of the protective order, or (2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking a person in violation of the protective order is a class C felony."

state's burden here to establish reasonable diligence in serving the warrant. So, the question becomes did [the state] satisfy that burden? I'm going to find that [it has]. I'm going to deny the motion . . . . Although there was a delay here, I don't find that it was unreasonable under the totality of the circumstances. There's certainly nothing here about the facts of this case that shocks the conscience; that some of the language that courts have used in determining whether there's been a constitutional violation; I don't find that at play in this case. Some of the other cases relied upon by the defendant, the facts of those cases are distinguishable, at least in part, because they involved a much longer delay. One case had an eight and a half year delay, one case had a two and a half year delay. Some of the cases contemplate, or use language contemplating, extreme delays. I don't find the delay here was extreme or that it shocked the conscience . . . [and] there's no dispute how long the delay was. It was roughly ten months on a case for which the statute of limitations was five years. One of the other cases cited had a delay of five years, which again informs the court's decision in this case; we're not approaching that length of a delay here." The court also noted that the present case was not a situation in which the state took no efforts to serve the warrant, as the state made "at least one effort to serve [the warrant]," thereby making the case distinguishable from those raised in the defendant's motion to dismiss.

Finally, the court stated that it "[took] seriously whether . . . the defendant was prejudiced by the delay. It is a fair point that defense counsel would have had an opportunity at least to pursue a global resolution had the warrant been served prior to the time when the defendant pled . . . on or about [June 30, 2023]. While it is often the case that defendants are given plea offers that contemplate global resolutions, there's really no guarantee that that would have been the case here.

So, to some extent, that harm, which is really the one that stands out to the court, it's at least somewhat speculative, though I certainly note that is not an uncommon practice at all that we have global resolutions. I don't find that the court system has itself been harmed by the delay here in this case, so for those reasons, the motion [to dismiss] is denied."

Subsequently, the defendant entered a conditional plea of nolo contendere as to count one, reserving his right to file an appeal from the court's denial of his motion to dismiss pursuant to General Statutes § 54-94a.[5] After a canvass, the court accepted the conditional plea, entered a finding of guilty on count one, and sentenced the defendant to an unconditional discharge. Thereafter, the state entered a nolle prosequi on count two. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the applicable standard of review and legal principles that are relevant to our resolution of the defendant's claim. "We initially address the standard of review for a trial court's denial of a motion to dismiss. Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is

[5] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable legal standard of review for the denial of a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions of the trial court or its factual determinations." (Internal quotation marks omitted.) *State* v. *Crosby*, 182 Conn. App. 373, 383, 190 A.3d 1, cert. denied, 330 Conn. 911, 193 A.3d 559 (2018).

Because the defendant asserts that his due process rights were violated by the state's delay in serving the arrest warrant, we note that "[t]he role of due process protections with respect to preaccusation delay has been characterized as a limited one. . . . [T]he [d]ue [p]rocess [c]lause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. . . . This court need only determine whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency . . . . The due process clause has not replaced the applicable statute of limitations . . . [as] . . . the primary guarantee against bringing overly stale criminal charges. . . .

"[T]o establish a due process violation because of preaccusation delay, the defendant must show both that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant. . . . [P]roof of prejudice is generally a necessary but not sufficient element of a due process claim . . . . [Additionally] the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." (Internal quotation marks omitted.) *State* v. *Coleman*, 199 Conn. App. 172,

180, 235 A.3d 655, cert. denied, 335 Conn. 966, 240 A.3d 281 (2020).

With these legal principles in mind, we turn to the merits of the defendant's sole remaining claim on appeal. The defendant claims that the court improperly denied his motion to dismiss because the state violated his right to due process when it served him with an arrest warrant ten months after the alleged conduct that formed the basis for the warrant had occurred. In support of this claim, the defendant argues that (1) "he was actually and substantially prejudiced by the state's preaccusation delay in bringing the criminal charge against him after he had previously obtained a global resolution of six other pending cases" and (2) although the state's failure to execute the defendant's warrant in a timely manner was the result of negligence rather than recklessness, the burden of proof should be allocated to the state to show that the delay was not wholly unjustifiable.[6]

As was iterated earlier in this opinion, with respect to the defendant's requisite showing of actual substantial prejudice; see *State* v. *Coleman*, supra, 199 Conn. App. 180; the court stated: "It is a fair point that defense counsel would have had an opportunity at least to pursue a global resolution had the warrant been served prior to the time when the defendant pled . . . on or about [June 30, 2023]. While it is often the case that defendants are given plea offers that contemplate global resolutions, there's really no guarantee that that would

---

[6] Additionally, the defendant appears to argue that the court erred (1) in not stating the legal standard it would be using to decide the defendant's motion to dismiss and (2) in applying the wrong legal standard. Insofar as the defendant raises this claim, we disagree. Notwithstanding that the court did not use the words "actual substantial prejudice," we conclude that, because the court explicitly determined that the defendant failed to establish that the state's delay in serving the arrest warrant prejudiced him, the court applied the proper standard as to the defendant's due process claim.

have been the case here. So, to some extent, that harm, which is really the one that stands out to the court, it's at least somewhat speculative . . . ."

The defendant argues that, contrary to the court's determination, he has demonstrated actual substantial prejudice because the prosecutor involved in his other pending cases stated on the record that she would have incorporated the case at issue into the global resolution for the defendant's other pending cases. The defendant also contends that a global resolution encompassing the charges underlying this appeal would have resulted in an earlier release or an earning of jail credit because there would have been no pending charges against him, and, therefore, harm could be assumed and was not speculative. We are not persuaded.

To begin, we conclude that the court did not err in concluding that the alleged loss of an opportunity for the present case to be incorporated into the global resolution of all of the cases pending against the defendant was speculative and, therefore, this purported result was not a proper basis to show that the defendant was actually substantially prejudiced by the delay. Although the state indicated on the record that it would have included the present case in the global resolution of all of the cases pending against the defendant, the state correctly notes that a global resolution was not a guarantee and the court would not have been bound to accept the potential plea agreement. See Practice Book § 39-10 ("[i]f the judicial authority rejects the plea agreement, it shall inform the parties of this fact; advise the defendant personally in open court or, on a showing of good cause, in camera that the judicial authority is not bound by the plea agreement; afford the defendant the opportunity then to withdraw the plea, if given; and advise the defendant that if he or she persists in a guilty plea or plea of nolo contendere, the disposition of the case may be less favorable to the defendant than that

contemplated by the plea agreement"). Moreover, this court has rejected similar arguments in the past, holding that a mere potential consequence of a preaccusation delay is distinguishable from a violation of the defendant's due process rights. See *State* v. *Coleman*, supra, 199 Conn. App. 182 n.7 ("The defendant also argues that the preaccusation delay prevented him from including the charges in this case with his federal charges in negotiating a global resolution of them. He further contends that the state was able to use the federal charges against him at his state sentencing hearing and that the preaccusation delay prevented him from participating in rehabilitative programs in federal prison that otherwise might have been available to him. Although these may have been consequences of the defendant's arrest in this case, they cannot reasonably be construed as due process violations arising from the preaccusation delay.").

The defendant's argument that he was actually substantially prejudiced because he would have been eligible for early release or an earning of jail credit on the six other pending cases if the arrest warrant were not outstanding is likewise unavailing. The notion that the defendant was deprived of the possibility of early release or earning jail credit is not supported by the record before this court, which the defendant's counsel conceded during oral argument. Without a factual basis to support this argument, or any evidence showing prejudice to the defendant in any other manner, we cannot conclude that the court erred in its determination that the defendant failed to establish actual substantial prejudice. See *State* v. *Morrill*, 197 Conn. 507, 522, 498 A.2d 76 (1985) ("[W]e have found nothing in the record that would substantiate either [(1) actual substantial prejudice from the delay or (2) that the delay was wholly unjustifiable]. There is a complete absence of proof concerning the cause or effect of the pretrial delay.").

We also agree with the state that the defendant was not actually substantially prejudiced because his period of incarceration did not increase as a result of the state's delay in serving the warrant, as he was ultimately sentenced to an unconditional discharge.

Even assuming arguendo that the defendant successfully demonstrated actual substantial prejudice, his due process claim would still fail because he has not met his burden of demonstrating that "the reasons for the delay were wholly unjustifiable . . . ." (Internal quotation marks omitted.) *State* v. *Coleman*, supra, 199 Conn. App. 180. In order to demonstrate that the delay was wholly unjustifiable, the defendant must show that the delay was a product of more than mere negligence and, instead, was caused by recklessness on the part of the state or was a tactical decision to disadvantage the defendant. See id., 183.

The defendant concedes that he has not met this burden and acknowledges that "[w]hat appears to be the case is that [the defendant's] arrest warrant fell between the proverbial cracks in the system. In other words, the state's failure to execute [the defendant's] warrant in a timely manner, if we are to believe the [state's] representations, was due to negligence rather than recklessness." (Internal quotation marks omitted.) The defendant advocates, however, for this court to depart from our Supreme Court's precedent establishing the standard for analyzing due process claims in the context of preaccusation delays and, contrary to such precedent, to allocate the burden of proof to the state to show that the delay was not wholly unjustifiable. As the defendant notes, such an approach would be similar to how courts analyze statute of limitations challenges. See *State* v. *Swebilius*, 325 Conn. 793, 807, 159 A.3d 1099 (2017) ("Once the defendant has presented evidence of his availability for arrest, it is reasonable and proper that the burden should then shift to the

state to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable. Doing so allocates burdens efficiently by requiring each party to bring forth evidence uniquely within its knowledge."). The defendant also argues that, if the burden were to be shifted in the present case, then the matter should be remanded for additional proceedings because "the state did not produce any competent evidence that its delay in executing [the defendant's] arrest warrant was not 'wholly unjustifiable.' " We reject the defendant's argument, as we are bound by the well settled law that, "[i]n order to establish a due process violation because of pre-accusation delay, *the defendant must show both* that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant." (Emphasis added.) *State* v. *Morrill*, supra, 197 Conn. 522; see also *State* v. *Vasquez*, 194 Conn. App. 831, 839–40, 222 A.3d 1018 (2019) (this court is "not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them" (internal quotation marks omitted)), cert. denied, 334 Conn. 922, 223 A.3d 61 (2020).

In sum, we conclude that the defendant's due process claim must fail, as he has not demonstrated that the state's delay in executing the arrest warrant (1) caused actual substantial prejudice and (2) was wholly unjustifiable.

The judgment is affirmed.

In this opinion the other judges concurred.